otherwise stick to the time limits. Alright, we'll begin today with the United States of America v. Steele and we'll start with, is it Mr. Felicides? Felicides, thank you. Sorry, thank you. That's as close as anyone ever comes. May it please the court, Ms. Daphne Stewart was the only witness at Mr. Steele's trial who testified and offered direct evidence of his fraudulent intent. She testified that he told her I falsified information on a tax return to inflate the refund. She testified that he told her how to do it as well. She was the only witness who testified to those facts, providing unique evidence within the government's case and uniquely damaging testimony. When Ms. Stewart was confronted with prior inconsistent statements, she made the federal law enforcement. Let me ask you this, even if the prior inconsistent statement was admissible, let's just assume that it was, why wouldn't any error here be harmless for a number of reasons, actually? It seems to me when you read Stewart's testimony, she impeached herself. The jury's acquittal on count 10 against your client shows that it discredited her testimony. During her testimony, Stewart's testimony, she admitted that she made false representations on her client's tax returns to get them larger refunds, and in fact, she admitted to lying on her own 2009 tax return. So let's just say we assume, arguendo, that it was an error, why wouldn't it be harmless? Yes, Your Honor, and I will try to answer each piece of your question. Please remind me if I haven't. As an initial matter, because there's a constitutional error, it's the government's burden to show beyond a reasonable doubt that the error was harmless and did not contribute to the verdict. So the starting point here is reversal. As to why this is not harmless and certainly not harmless beyond a reasonable doubt, there's a number of reasons. For one, the issue with respect to her credibility. A jury is instructed to take a witness and trust their testimony in part, in whole, or not at all. Certainly, the jury had issues with the government's quantum of proof. They acquitted on five of the 11 counts, including one of the counts related to Ms. Stewart. It tells me the jury understood exactly what this case was all about. Their acquittal related to her statements regarding the witness tampering simply does not mean that they discredited her testimony in whole. Those two things are not equal. They could not convict beyond a reasonable doubt as to some of her statements. But here's the problem, right? You've got all of this other evidence. You've got Tate, Taylor, and Washington all testifying about how they went in. The only person they spoke to was Mr. Steele. They told Mr. Steele all of their information, provided him with their documents. Some of them waited for him while he went back, and then he came out and had them sign. They didn't go through line by line at the time, but they later discovered that there was false information that they had not provided. I mean, why is that not enough on the assisting and the preparation of fraudulent tax returns counts? And why isn't that not enough beyond a reasonable doubt? Certainly, those taxpayers offered circumstantial evidence. But circumstantial evidence counts as much as direct evidence. Absolutely, it does. But there's a reason that every court gives the instruction to a jury that circumstantial evidence counts just as much as direct evidence. And that reason is juries find direct evidence extremely persuasive. And so each taxpayer came in, they provided returns, they provided testimony that gave circumstantial evidence. But Ms. Stewart came in and provided direct evidence. She was the glue that binded this case together. She said, I know how MaxTax operates. I know, and I'm the only person who testified, that he was regarded as a tax preparer at MaxTax, that he was employed that way. And she was the only person to offer testimony that he acknowledged making false statements. So- Well, well, didn't Ms. Washington say, I think it was Ms. Washington, that it was either Tate Washington or Taylor, may have been Taylor, who said that they understood Mr. Steele to be offering the bribe to change their story when they talked to the IRS. I mean, it seems like there's an awful lot of other testimony and evidence here that would allow a jury to find beyond a reasonable doubt that Mr. Steele committed the crimes for which he was convicted. There was evidence, Your Honor. But the question is not, can we support the verdict? I agree. The question is whether we are convinced that beyond a reasonable doubt, if there was the error, then that error would not have resulted in a different verdict. That's what the question is. And what I'm asking you is why, based on the testimony that I've just discussed, why we can't find that? Because I'm not understanding. Was there something wrong with the testimony of these other three individuals? Is there some reason why three different people who testified to essentially the same types of things and for whom the verdicts on those counts was returned as opposed to not returning a verdict on the count involving Ms. Stewart's tampering? Is there something about that that makes it for us to find that we cannot find beyond a reasonable doubt that the error that occurred was harmless? Well, I think clearly the jury had concerns about the quantum of evidence offered by the government as they acquitted on two of the tax fraud counts. So we have issues related to, you know, the government needed to bind together their offers through those witnesses. And so could it have been enough for, had the government offered evidence only of those taxpayers providing that circumstantial evidence? It could have. But because Ms. Stewart's testimony was offered, because it bolstered the testimony of those witnesses, because it offered direct evidence, that is extremely persuasive evidence. Mr. Steele had a Sixth Amendment right to confront that evidence, and he was denied that right. And so I think we can't piece back and separate out each piece of evidence when there's compelling evidence that has been introduced and has erroneously been not confronted. Let me tell you one additional problem I think you have in this case. And I understand that the issue before us on appeal is whether or not this prior inconsistent statement should have been admitted or not. But your client testified during this trial. Are you familiar with our precedent of United States versus Brown? You know what Brown says? It says when a defendant takes the stand, the burden of proof never shifts in a criminal case. It's always on the government to prove beyond a reasonable doubt the defendant's guilt. But in Brown, we said the jury, after hearing the defendant, can choose to credit or discredit however much of the defendant's testimony they hear. And your client testified, and it's obvious to me, this jury didn't believe much, if not all, of what your client said when he testified because he contradicted every other witness who testified. What do you say about that? Why wouldn't that go to the harmless error analysis? Yes, Your Honor. I think to the extent we can divine the jury's understanding, they did believe him or at least believe the government had improved on several counts. So his testimony did line up with that. In addition, the inconsistent statements being excluded wrongly not only prevented the defense from impeaching Ms. Stewart, it also facilitated the government's impeachment of Mr. Steele and his testimony. There was contradiction between Mr. Steele and Ms. Stewart regarding her work hours and the government in both cross-examination and in closing said to the jury, well, who's telling the truth here? So we have that direct contradiction. And so not only would it have impeached Ms. Stewart based on the offers of proof, we believe it would have bolstered Mr. Steele's testimony and undermined that impeachment by the government. So I think it's important to note that there's three fronts to this. And to address your question, although I'm not familiar with that case, I think the evidence that was wrongly denied could have bolstered Mr. Steele's testimony in a way that affects the quantum of persuasion that you're referring to. I think it's also important to note that the particular prior inconsistent statements were relevant to Ms. Stewart's story about how Mr. Steele admitted making false statements. They tied into that. And I may address that further when my time remains. Actually, if you want to just do one brief statement on it, because otherwise you won't be able to address it on rebuttal. Yes, ma'am. Ms. Stewart's offered testimony that she prepared her mother's taxes. She left for the day. Mr. Steele was the one there. The next morning, she came back in and she said, I added these statements to your mother's tax return. It inflated the refund. And I transmitted those to the IRS. That was her story. Very incriminating as to Mr. Steele's mens rea. The statements, the inconsistent statements regarding her hours and also the fact that she had previously stated that any tax return that was transmitted would be reviewed by one of the owners before that. It makes that story less plausible. It undermines that credibility. All right. Thank you, Mr. Elisibes. You've reserved five minutes for rebuttal. Ms. Holt. May it please the court. Elizabeth Holt for the United States. Mr. Steele was convicted of five counts of aiding in the preparation of materially false tax returns and one count of witness tampering. He was acquitted of five counts. Critically, he was acquitted of the only count directly related to Ms. Steele. The one statement that the record reflects could be a prior inconsistent statement has to do with the level of review of tax returns Ms. Stewart prepared. Did the prior inconsistent statement affect any other count he was convicted of? Not the count he was acquitted of, but any other count he was convicted of? No, Your Honor. The record does not reflect that there would have been any, that her testimony, the prior inconsistent statement would have affected any other count. The prior inconsistent statement actually was not about the review generally of tax returns. It was a question about the review of tax returns Ms. Stewart prepared. And maybe I misunderstood. Maybe you can correct me if I'm wrong. My understanding was that one of the impeachment problems had to do with Ms. Stewart's testimony that she arrived after Mr. Steele and left before he did. And then the next morning when she would come in, he would say everything's been filed. And that she supposedly told the agent that she actually arrived before Mr. Steele and left after him. And so that would actually go to, seems like possibly, go to the non-tampering counts. Why wouldn't that? And do I have that right? Your Honor, it would not for several reasons. From the beginning, the government would actually argue that that argument is waived. It was not raised anywhere in the opening, Mr. Steele's opening brief. That was put into the reply brief. As a result, in preparation for the oral argument, in reviewing the reply brief, the government actually went and was able to find the memorandum of interview that is the issue in this case. The memorandum of interview actually reflects that Ms. Stewart did not make a prior and consistent statement. Okay, but that's not a part of our record, is it? Your Honor, you are correct. It is not. Can't consider it. Your Honor, I would say also that that is actually reflected though in the government's redirect of Ms. Stewart. But that's not evidence. No, Your Honor, but you have a situation. So part of my answer to Your Honor is you have a situation where the defense counsel has asked Ms. Stewart, well, didn't you tell the agent this? She said no. On redirect, the government asked, well, didn't you actually tell the agent that it was Mr. Steele who worked from 8 to 8, not you? Yes. So you have that back and forth for the jury to review. However, even regardless, even if we assume that that is a prior and consistent statement and that those are the work hours of Ms. Stewart and Mr. Steele, that does not necessarily mean that Mr. Steele could not otherwise have transmitted tax returns. In addition, while the tax returns were obviously transmitted to the IRS, that's how the IRS has them, Mr. Steele was actually charged with aiding and abetting in the preparation and procurement of those tax returns. He did not necessarily have to transmit them. So regardless of the time frame, there was not evidence one way or the other that would have suggested that Mr. Steele could not have otherwise transmitted the tax returns at some other point in time or that someone else could. You have very strong evidence, as the Court noted, of the actual counts of conviction. There were six counts of conviction over a two-year tax time period. Two of those counts of conviction, Ms. Stewart didn't even work at max tax. Twenty, the 2010 ones. Yes, Your Honor, correct. And so those two witnesses, Tate and Washington, testified first to their interactions with Mr. Steele in 2010. I came in. I gave him my tax return. This is what happened. Then testified. Essentially, I came back the next year and did the same thing with Mr. Steele. Ms. Stewart wasn't even there for the first year of those tax returns where they established their relationship with Mr. Steele. The third individual, Taylor, was the one where her testimony was bolstered, if you will, by the fact that there was a $200 check that was admitted, that Mr. Stewart signed, that Mr. Stewart gave her, that she testified was a bribe. None of that testimony relates in any way to any testimony by Ms. Stewart. Ms. Stewart testified in some about max tax, but she testified also about, excuse me, the witness tampering count that Mr. Steele was acquitted of. Clearly, as the court noted, the jury did not believe her. She impeached herself over and over. She admitted she falsified tax returns. She admitted she falsified her own tax return. She did have a prior inconsistent statement. The defendant was allowed to cross-examine her, did impeach her in these ways, and she impeached herself. For those reasons, because it is, the government would argue from the get-go, completely immaterial, the decision itself to exclude agent testimony was not an abuse of discretion. Even if it was an error to exclude that agent testimony, the government would then argue that it was harmless error. There was no effect on the jury because it is clear that the individuals, the taxpayers came in and testified to their interactions with Mr. Steele and only Mr. Steele, and that he did their tax returns. For these reasons, the government would ask that the judgment below be affirmed, and we will rest on our brief. Thank you, Your Honor. Thank you, counsel. Mr. Felicities. Thank you, Your Honor. I'd like to take a moment to refocus on what we moved past quite quickly, which is there was error here, there was constitutional error here. What Mr. Steele wanted was a fair shake at trial to present important and admissible evidence, and he was denied that right. That's why it's the government's burden. We're now delving into the evidence as we must, but fundamentally, that's a jury's job. We have- And I understand your point, but the Supreme Court has told us that we have to examine when there is constitutional error, whether it was harmless beyond a reasonable doubt, and that's why we're doing it. We're assuming there was error. So that's why we're focusing on the second half of the equation. Of course, Your Honor. And I think because there's that constitutional error, we look to Ms. Stewart and the importance of what was excluded. And the importance of what she presented. The government's case relied on certain categories of evidence. Ms. Stewart was the category that said, here's his mens rea, here's how we know he acted knowingly. Because there's a constitutional error- What about the fact that, you know, of course, he was charged with assisting in the preparation and aiding and abetting. So the government is correct, of course, that he doesn't have to have done each act himself as long as he aided and abetted in the doing of the acts. And we've got the testimony of Ms. Taylor and Washington and Tate. We've got these witnesses testifying, at least some of them, that he admitted that he got it wrong with respect to them. So, you know, he said, it was my bad. I don't, you know, when the witness said, I didn't give you this information. I don't know where he got it from. And that he admitted that he had gotten it wrong to them. I mean, what are we to do with that? Your Honor, I think to the extent that there were, I mean, generally, like the payment to Ms. Washington, I believe it was, was framed as a tax refund. And what we're focusing on here is- Except it was, I think it may have been Taylor, but it also came with a statement to whoever it was that she should please let the IRS know if they questioned her that she had worked not with him, but instead with a redheaded woman. Right? And she did make that testimony. Other witnesses, Mr. Whalen, Mr. Latoie, also made statements that he had approached them and he was acquitted on those counts. There were concerns about the government's quantum of proof. And when he was denied the opportunity to discredit that government witness, it infected those counts. To separate out now, I think, assumes more knowledge of the jury's deliberation than we're entitled to. If there's circumstantial evidence and very damning direct evidence, we can remove that direct evidence in our minds, but we can't remove it in the minds of the jury. And so if that was the nail in the coffin, which I think it very well may have been. If we were to agree with you, what counts would we vacate? You've got tax fraud counts. You've got witness tampering. What would this affect? It affects all counts. How does it affect a witness tampering? Witness tampering relates to the underlying count of the tax fraud. In other words, if the allegation is Mr. Steele fraudulently prepared this tax return and then bribed or offered Ms. Stewart to say something different. If he didn't prepare that tax return or if he's not proved beyond a reasonable doubt that he prepared that tax return, it's certainly less likely that he would have engaged in that witness tampering. Certainly, it is another inferential step, but I think it is clearly related to. And because Mr. Steele was wrongly denied the opportunity to undermine those tax fraud counts, he was also wrongly denied the opportunity to undermine the case for witness tampering. So I do believe reversal on all counts is appropriate. Because it's a constitutional error, that's the starting point. And the government has not carried its burden beyond a reasonable doubt. Do you agree you can have harmless error even if there's a constitutional? If it's a constitutional error, harmless error could still apply? Yes, Your Honor. Yes. Thank you, counsel. The next case is Rabin v. Roberts. And we'll wait just a moment until the courtroom settles down. Thank you. All righty.